United States Court of Appeals,

Fifth Circuit.

No. 91–1950.

Rhonda WILSON, Plaintiff–Appellant,

v.

BELMONT HOMES, INC., Defendant–Appellee.

Aug. 28, 1992.

Appeal from the United States District Court for the Northern District of Mississippi.

Before POLITZ, Chief Judge, SMITH and BARKSDALE, Circuit Judges.

JERRY E. SMITH, Circuit Judge.

Rhonda Wilson filed suit against her employer, Belmont Homes, Inc. ("Belmont"), claiming that it discharged her because o f her sex. After a bench trial, the district court denied her claim. Wilson appeals, arguing that she was entitled to a jury trial under the Seventh Amendment or, alternatively, the Civil Rights Act of 1991 (the "Act")[1] and that the district court erred in finding for Belmont after the court rejected the only legitimate reason articulated for her discharge. We affirm.

I.

In July 1989, Wilson was hired to build mobile home cabinets for Belmont in Mississippi. She worked for Belmont for six days, after which she was fired. During those six days she does not seem to have received any evaluation or criticism, although she testified that her supervisor, Kenny Hill, told her that she was doing "a man's job."[2]

In the afternoon of her sixth day, Wilson was called to the production room with another female worker, and both of them were fired.[3] According to testimony, Hill previously had fired three

[1]Pub.L. No. 102–166, 105 Stat. 1072–73 (1991).

[2]Hill testified that *Wilson,* not he, so characterized the job.

[3]The other female worker later was rehired.

male Belmont employees, and he later quit as well. Although Wilson asserts that she was not told why she was fired, her employers testified that it was for incompetence. The scanty evidence at trial conflicted on this and most of the other issues.

Wilson filed a title VII action[4] alleging that she had been unlawfully terminated from her job because of her sex. She requested a jury trial and demanded back pay, punitive damages, injunctive relief, and reinstatement. After a bench trial, the district court found for Belmont on the ground that Wilson had not shown that Belmont's articulated reason for firing her was a sham or pretext.

II.

Wilson first argues that the district court denied her Seventh Amendment right to a jury trial in a civil case.[5] She acknowledges that circuit precedent dictates that jury trials are not available for title VII actions because the statutory relief is purely equitable. *See Young v. City of Houston,* 906 F.2d 177, 181 n. 3 (5th Cir.1990); *Johnson v. Georgia Highway Express,* 417 F.2d 1122 (5th Cir.1969). Wilson argues, though, that in light of recent Supreme Court precedent, jury trials for title VII claims are required under the Seventh Amendment.

Wilson reasons that the Supreme Court has held that jury trials must be available for legal claims, so where "damages" are available to a plaintiff, so too must be a jury trial. *See Curtis v. Loether,* 415 U.S. 189, 193–96, 94 S.Ct. 1005, 1007–09, 39 L.Ed.2d 260 (1974). In this light, the Court has held that a number of civil rights statutes require jury trials. *See, e.g., Lorillard v. Pons,* 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978) (Age Discrimination in Employment Act). Additionally, recent Supreme Court cases have set out a method of determining whether a jury trial is constitutionally required, a method that Wilson argues shows that one is called for here.

---

[4]42 U.S.C. § 2000e, *et seq.*

[5]"In suits at common law, ... the right of a trial by jury shall be preserved." U.S. Const. amend. VII.

In *Tull v. United States,* 481 U.S. 412, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987), the Court stated that to determine whether a statutory action is more like cases that were tried in courts of law (and thus subject to jury trial) than like those tried in courts of equity, the court must examine the nature of both the action and the remedy sought. "First we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second we examine the remedy sought and determine whether it is legal or equitable in nature." *Id.* at 417–18, 107 S.Ct. at 1835 (citations omitted). The Court considers the second stage of the analysis to be more significant than the first. *Id.* at 421, 107 S.Ct. at 1836–37; *Granfinanciera v. Nordberg,* 492 U.S. 33, 42, 109 S.Ct. 2782, 2790, 106 L.Ed.2d 26 (1989).

Wilson likens the action here to a common law action for debt and the back pay remedy to one for simple compensatory damages. Thus, she argues, jury trials are required under title VII.

We disagree. No Supreme Court case has explicitly overruled our previous rule that jury trials are not available under title VII, and nothing convinces us that the overruling has been implicit. The Supreme Court cases discussing the availability of jury trials under other civil rights provisions recognize that title VII has been treated differently. *See, e.g., Curtis,* 415 U.S. at 196–97, 95 S.Ct. at 1009–10; *Lorillard,* 434 U.S. at 583–85, 98 S.Ct. at 871–72. The language of former title VII was unique, specifying only equitable relief.[6]

Wilson has given us no reason to reject our longstanding rule that back pay under title VII is an equitable remedy. No circuit court that has considered the issue has held that jury trials are

---

[6]The version of title VII, 42 U.S.C. § 2000e–5(g), effective at the time of trial provided,

> The court may enjoin the respondent from engaging in an unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay ... or any other equitable relief as the court deems appropriate.

available under title VII,[7] and the Supreme Court has stated in *dictum* that there "of course" is no right to a jury trial in title VII cases. *Lehman v. Nakshian,* 453 U.S. 156, 164, 101 S.Ct. 2698, 2703, 69 L.Ed.2d 548 (1981).

Additionally, in the post-*Tull* case of *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry,* 494 U.S. 558, 570–73, 110 S.Ct. 1339, 1347–49, 108 L.Ed.2d 519 (1990), the Court noted that monetary relief may be equitable where damages are a form of restitution and incidental to, or intertwined with, injunctive relief, as they are under title VII. In the instant case, where reinstatement is unquestionably equitable and backpay obviously would be restitutionary, *id.* (citing *Curtis,* 415 U.S. at 197, 94 S.Ct. at 1010), and Congress has characterized the relief as equitable, *see id.,* we cannot say that our holding, and that of the other courts of appeals, is inconsistent with the view of the Supreme Court. The Seventh Amendment does not guarantee Wilson a right to a jury trial for a title VII claim.

### III.

Section 102 of the Act amends title VII to allow a plaintiff to recover compensatory and punitive damages for unlawful intentional discrimination and to permit any party to demand a jury trial. The Act was passed in November 1991, less than three months after the district court decided this case. Wilson argues that the Act should apply to her case and that she is entitled to a new trial before a jury.

---

[7]*See, e.g., Hubbard v. Environmental Protection Agency,* 949 F.2d 453, 463 (D.C.Cir.1991) (discussing congressional intent that title VII relief be in equity, recognizing that back pay element of title VII award is part of statutory equitable remedy, and listing consistent cases from other circuits), *reh'g en banc granted in part on other grounds, denied in part,* 949 F.2d 475 (D.C.Cir.1992); *Ramos v. Roche Prods.,* 936 F.2d 43, 50 (1st Cir.) (characterizing back pay as equitable and holding that no jury trial is available for title VII claim), *cert. denied,* —— U.S. ——, 112 S.Ct. 379, 116 L.Ed.2d 330 (1991). *See also Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry,* 494 U.S. 558, 572, 110 S.Ct. 1339, 1348, 108 L.Ed.2d 519, 108 L.Ed.2d 504 (1990) (Congress specifically characterized backpay under title VII as a form of equitable relief); *Sparrow v. Commissioner,* 949 F.2d 434, 438–39 (D.C.Cir.1991) (title VII remedies, including back pay, properly considered equitable), *cert. denied,* —— U.S. ——, 112 S.Ct. 3009, —— L.Ed.2d —— (1992).

Despite Wilson's arguments about legislative intent and presumptions of retroactivity, no circuit court has applied the Act retroactively.[8] Indeed, we already have determined that the portions of the Act that provide for jury trials and compensatory damages for claims under title VII do not apply to cases that were tried before the Act was enacted. *See Landgraf v. USI Film Prods.,* No. 91–4485, —— F.2d ——, ——, 1992 WL 178737, at *6 (5th Cir. July 30, 1992). In *Landgraf* we noted that the Supreme Court's retroactivity jurisprudence apparently is contradictory[9] but that even under the *Bradley* standard, to require a party "to retry a case because of a statutory change enacted after the trial was completed would be an injustice and a waste of judicial resources." *Id.*

Although generally we apply procedural rules to pending cases, we do not invalidate procedures followed before the new rules were adopted. *Id.* (citing *Belser v. St. Paul Fire & Marine Ins. Co.,* 965 F.2d 5, 9 (1992)).[10] In the instant case, the district court conducted a bench trial in a proper exercise of its power at the time. We will not force the court to retry the case with a jury based upon a law that did not then exist.[11]

---

[8]*See, e.g., Johnson v. Uncle Ben's, Inc.,* 965 F.2d 1363 (5th Cir.1992); *Mozee v. American Commercial Marine Serv. Co.,* 963 F.2d 929 (7th Cir.1992) (on petition for rehearing); *Fray v. Omaha World Herald Co.,* 960 F.2d 1370 (8th Cir.1992); *Vogel v. City of Cincinnati,* 959 F.2d 594 (6th Cir.1992), *petition for cert. filed,* 60 U.S.L.W. 3881 (U.S. June 11, 1992) (No. 91–2001).

[9]*See Kaiser Aluminum & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 837, 110 S.Ct. 1570, 1577, 108 L.Ed.2d 842 (1990) (noting apparent conflict between *Bradley v. Richmond School Board,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), which states that retroactivity is the norm, and *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988), in which a unanimous Court stated, "Retroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result.").

[10]Additionally, in *Uncle Ben's,* 965 F.2d at 1374 we relied upon the canon that statutes affecting substantive rights, as opposed to procedural ones, should be applied only prospectively. In *Rowe v. Sullivan,* 967 F.2d 186, 193–94 (5th Cir.1992), we suggested that where a party attempts to use a statutory change to revive a right that did not exist under the law as it was at the time of the events in question, the right at issue has substantive attributes. We need not follow that suggestion to decide the instant case, though.

[11]The language of the Act does not require retroactivity, *Uncle Ben's,* 965 F.2d at 1373, so under *Bowen* we would reach the same result.

IV.

Wilson also argues that the district court erred in finding that she had not established that Belmont terminated her for forbidden reasons. We see no error.

To prove a title VII claim, the plaintiff has the initial burden of proving a *prima facie* case of discrimination. The burden then shifts to the employer to articulate "some legitimate, nondiscriminatory reason for the termination" and to show that any discriminatory motive did not play a significant factor in the decision to discharge the plaintiff. The burden then returns to the plaintiff to prove by a preponderance of the evidence that the articulated legitimate reason was a mere pretext for a discriminatory decision. *E.g., Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981); *Whiting v. Jackson State Univ.,* 616 F.2d 116, 121 (5th Cir.1980).

The district court found that Wilson, by showing that she was a woman, was qualified for her job, and was terminated and that Belmont retained comparably qualified men after she was fired, had made a *prima facie* case. *See, e.g., McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). It then found that she had not borne her burden of proof in establishing that Belmont's articulated reason for firing her, namely poor performance, was pretextual or that discrimination was a substantial factor in her firing. The court found that Hill told her that hers was a man's job, but Wilson was unable to tie that remark to proof that her firing stemmed from illegal motives. Wilson argues that the court erred in that once it discredited Belmont's claim that she was a poorer worker than those who were not fired, it then could not accept the articulated reason for discharge.

We do not believe that the district court "discredited" Belmont's assertion. It never disputed that Belmont did, indeed, find her performance to be unsatisfactory. The court stated that the "most credible" testimony about her performance "suggested that plaintiff performed ably for a new

employee starting a new job," but that does not constitute a finding that Belmont actually found her performance adequat e and that the reason Belmont gave for discharging her was a pretext for discrimination. The court noted that Wilson's supervisor may have been a poor leader who had unreasonably harsh standards; thus, her performance may have been adequate by objective standards but not by those that Hill applied to all workers, regardless of gender. In other words, the court's finding that she had made her *prima facie* case did not constitute a finding that Wilson's performance was satisfactory but that she was qualified for the job. *See, e.g., Bienkowski v. American Airlines,* 851 F.2d 1503, 1505–06 (5th Cir.1988) (distinguishing court's consideration of the merits of the plaintiff's *prima facie* case from its consideration of the merits of the articulated reason for the allegedly discriminatory action).

Title VII, by its own terms, does not require that an employer terminate its employees only for good cause; our inquiry is not into the merits of the employer's employment decisions but into the motives.[12] As a matter of law, the district court's finding that Wilson had not borne her burden of proving that the articulated reason for her discharge was pretextual was not inconsistent with its finding that she performed ably for a new employee. As a matter of fact, we cannot say that the court's finding that Wilson did not prove that Hill terminated her for what he, perhaps wrongly, saw as poor performance was clearly erroneous.

AFFIRMED.

---

[12]*Cf. United Steelworkers of Am. v. Weber,* 443 U.S. 193, 205–06, 99 S.Ct. 2721, 2728, 61 L.Ed.2d 480 (1979) (Title VII was not intended to "diminish traditional management prerogatives."), cited in *Burdine,* 450 U.S. at 259, 101 S.Ct. at 1096.